**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00091-HBB**

**JOHNNA HENDRICKS**                                                                     **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION[1]**                             **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Johnna Hendricks ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both the Plaintiff (DN 21) and Defendant (DN 29) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and that judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13).   By Order entered November 2, 2020 (DN 14), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1 Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

On January 24, 2018, Plaintiff protectively filed an application for Disability Insurance

Benefits (Tr. 87, 263-65, 266-72).   Plaintiff alleged that disability beginning August 14, 2017, as

a result of traumatic brain injury ("TBI"), photophobia and eyes do not line up (visual

impairments), vertigo, migraines, optical migraines, pulsation in head, seizure auoras (eyes roll

back in head), cannot turn head, and two back surgeries (Tr. 87, 147, 169, 281).   The application

was denied initially on May 18, 2018, and upon reconsideration on September 18, 2018 (Tr. 87,

166, 167, 187-88, 189).

On April 22, 2019, Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a

video hearing from Paducah, Kentucky (Tr. 87, 112, 114).[2]   Plaintiff and her counsel, Sara

Martin-Diaz, participated from Owensboro, Kentucky (Id.).   Kenneth Boaz, an impartial

vocational expert, testified during the hearing (Id.).

In a decision dated June 12, 2019, the ALJ evaluated this adult disability claim pursuant to

the five-step sequential evaluation process promulgated by the Commissioner (Tr. 87-101).   The

ALJ noted that Plaintiff meets the insured status requirements of the Social Security Act through

December 31, 2022 (Tr. 89).   At the first step, the ALJ found that Plaintiff has not engaged in

substantial gainful activity since August 14, 2017, the alleged onset date (Id.).   At the second step,

the ALJ determined that Plaintiff has the following severe impairments: reynaud phenomenon of

the right hand; carpal tunnel syndrome; TBI; degenerate disc disease; major depressive disorder;

---

2 The decision indicates that Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted the video hearing
from Nashville, Tennessee (Tr. 87).   By contrast, at the outset of the administrative hearing, the ALJ specifically
states that she is conducting the video hearing from Paducah, Kentucky (Tr. 114).   The Court is relying on the ALJ's
statement in the hearing transcript.

generalized anxiety disorder; obesity; cervicalgia; vertigo; and migraines (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with certain postural, environmental, and mental limitations (Tr. 92). Specifically, the postural limitations are: Plaintiff could occasionally balance, kneel, stoop, crouch, crawl and climb ramps and stairs; she should never climb ladders, ropes and scaffolds; she could frequently handle and finger using her upper extremities; and she could frequently reach overhead and all around using her upper extremities (Id.).   The environmental limitations are Plaintiff should have no exposure to unprotected heights and moving mechanical parts; she could only work in conditions where the lights are no brighter than a standard office building; she could not work where there is strobe lights; and she could only work at a moderate noise level (Id.).   The mental limitations are Plaintiff could understand, remember and carry out simple routine tasks and sustain concentration, persistence and pace for the completion of those tasks for two-hour segments of time in an eight-hour workday; she could not work at a production-based job; she could have frequent interaction with co-workers, supervisors and the public; she is limited to making simple work place decisions; and she is limited to simple work place communications (Id.).   The ALJ relied on testimony from the vocational expert to find that with the above RFC, Plaintiff is unable to perform any of her past relevant work (Tr. 99).

The ALJ proceeded to the fifth step where she considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 100-01).   The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national

economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 14, 2017, through the date of the decision (Tr. 101).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 261-62).   The Appeals Council denied Plaintiff's request for review (Tr. 2-5).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 2-5).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the

4

evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

5

4)   Does the claimant have the RFC to return to his or her past relevant work?

5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

<u>Prejudgment Remand</u>

1.   Arguments of the Parties

Plaintiff argues that a prejudgment remand is appropriate pursuant to sentence six of 42 U.S.C. § 405(g) regarding evidence disregarded by the Appeals Council and evidence not properly proffered to the ALJ (DN 21-1 PageID # 1111-14).   Plaintiff explains that her claim primarily relates to residual injuries and limitations she sustained as a result of a motor vehicle accident on July 17, 2015 (<u>Id.</u> at PageID # 1111).   As the accident occurred during the scope of her employment, much of her treatment has been dictated by workers compensation (<u>Id.</u>).   Plaintiff explains that she has separate representation for her Social Security Disability Benefits claim, her worker's compensation claim, and her personal injury claim (<u>Id.</u>).   As a result, the ability of counsel in this proceeding to receive records generated in the two other proceedings has "been very difficult" (<u>Id.</u>).

After her administrative hearing, Plaintiff's counsel in this proceeding received records "that are incredibly relevant to this claim" (<u>Id.</u>).   Plaintiff explains that many of her severe impairments relate to her TBI causing ongoing migraines, vertigo, visual problems, and neck pain (<u>Id.</u> at PageID # 1111-12).   Plaintiff claims that workers compensation paid for independent reports to minimize this and point to depression as the cause of these residuals (<u>Id.</u> at

6

PageID # 1112).   Unfortunately, the ALJ was influenced by these reports and relied on Dr. Oliver's opinion in assessing Plaintiff's RFC (Id.).   Following the administrative hearing, Dr. Greenwald, a treating physician, drafted a rebuttal report that discounted the opinions of Drs. Oliver and Gray (Id.) (citing Tr. 106-11).   Plaintiff claims that in this new and material evidence, Dr. Greenwald encloses the results of Videonystagnography ("VNG") testing which objectively confirms Plaintiff's TBI (Id.) (citing Tr. 1028-32).[3]   Plaintiff claims that her VGN testing was delayed due to the workers compensation method she had to undertake (Id.).   Because counsel in this proceeding did not have access to Plaintiff's workers compensation file, counsel had to wait until the attorney in the worker's compensation case provided "this report" (Id.).   Plaintiff reports that her attorney in the workers compensation case promptly sent it to counsel in this case on June 18, 2019, but by then the ALJ had issued the unfavorable decision (Id.).   Plaintiff asserts "this was not obtainable by [her counsel in this action] prior to that time and clearly relates to the relevant time period (Id.).   Plaintiff argues "[g]iven that Dr. Greenwald was one of the opinions assessed by the ALJ, his supplemental report addressing very new and relevant objective testing should have been exhibited [by the Appeals Council] and submitted to the ALJ for a remand.   This is especially true given the fact that the ALJ exhibited the testing itself, but not his reported dated just four days later." (Id.).

Plaintiff also points out that on July 13, 2019, her personal injury attorneys provided counsel in this proceeding with a copy of a work life expectancy report prepared by a vocational

---

3 Plaintiff asserts that traditional imaging, like CT scans and MRIs, often times do not reveal many TBIs and so additional testing such as the VGN is required (DN 21-1 PageID # 1112).   Plaintiff points out that Dr. Greenwald stated the VGN test revealed objective abnormality of optokinetic testing resulting from central nervous system dysfunction (Id.) (citing Tr. 110).

economic specialist (Id. at PageID # 1112-13) (citing Tr. 9).   Plaintiff argues "[f]or the same reasons above, this should have been exhibited [by the Appeals Council] and remanded to the ALJ for consideration" (Id.).   Plaintiff indicates the report specifically applies her "diagnoses and restrictions to very objective and reliable methodology to ultimately determine that her work life expectancy is zero years" (Id. at PageID # 1113).   Plaintiff claims the evidence "is incredibly material as it is speaking to the exact issue in [her] claim and was not available at the time of the hearing" (Id.).

Moreover, Plaintiff points out that the results of the VNG testing was not proffered to her counsel in this proceeding "until February 28, 2020 by the Appeals Council" (Id.).   Yet, this evidence is listed as Exhibit 16F to the ALJ's decision, "but oddly is not at all referenced by the ALJ in her decision" (Id.).   Plaintiff contends "[i]t is questionable if the ALJ had access to this very material objective evidence at the time she issued her decision and how this situation even occurred.   The Appeals Council agrees this is new and material given it was exhibited and proffered after the hearing, however there is not any evidence indicating the ALJ had the same opportunity" (Id.).   Plaintiff assets that this alone requires a remand (Id.).

Defendant argues that none of the evidence Plaintiff mentions is new (DN 29 PageID # 1167-69).   The November 2018 report by the vocational specialist existed before the ALJ's hearing (Id. at PageID # 1167) (citing Tr. 9-70).   Dr. Greenwald's supplemental opinion is dated May 14, 2019, approximately a month before the ALJ's decision (Id.) (citing Tr. 106-11).   Additionally, Defendant contends that Plaintiff's claim—the evidence was part of her workers compensation claim—is not a sufficient to satisfy the "good cause" requirement because the evidence was available from her medical providers (Id. at PageID # 1167-68).   Further, the

vocational report is not "material" evidence because it would not have been considered by the ALJ as it addresses an issue reserved for the ALJ, and the ALJ issued her decision after March 27, 2017 (Id. at PageID # 1168) (citing 20 C.F.R. § 404.1520b(c)(3)).   Dr. Greenwald's supplemental report is also not "material" because it reached the same conclusion as the 2018 report that the ALJ did consider and found unpersuasive (Id.) (citing Tr. 98).

   2.   Applicable Law

   "A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . ." Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006).   The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence six-remand)." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).

   Under sentence six of 42 U.S.C. § 405(g), the Court does not address the correctness of the administrative decision.   Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991), Hollon, 447 F.3d at 483. "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding."   Melkonyan, 501 U.S. at 98.   The party seeking this type of remand has the burden of demonstrating that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"   42 U.S.C. § 405(g).

The Supreme Court of the United States has explained that evidence is "new" only if it was "not in existence or available to the claimant at the time of *the administrative proceeding*." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); *see* Melkonyan, 501 U.S. at 98 (indicating that evidence is "new" if it was not available to the claimant at the time of the administrative proceeding). The Sixth Circuit uses "administrative proceeding" and "hearing" interchangeably in its discussion of the applicable law. *See e.g.* Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). Thus, in assessing whether the evidence is new, the issue is whether the medical records existed or were available to Plaintiff at the time of the administrative hearing.

Evidence is "material" only if there is "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Ferguson, 628 F.3d at 276; Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001); Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). Notably, evidence is not considered material if it merely depicts an aggravation or deterioration in an existing condition. Sizemore, 865 F.2d at 712.

"Good cause" is demonstrated by showing "a reasonable justification for *the failure to acquire and present the evidence for inclusion in the hearing* before the ALJ." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (emphasis added). Clearly, this rule of law applies when the medical evidence is available at the time the ALJ conducts the administrative hearing. The Sixth Circuit has also indicated that "good cause" is "shown if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." Koulizos v. Sec'y of Health & Human Servs., No. 85-1654, 1986 WL 17488,

at *2 (6th Cir. Aug. 19, 1986) (citing <u>Wilson v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1181

(6th Cir. 1984) and <u>Willis v. Sec'y of Health & Human Servs.</u>, 727 F.2d 551 (6th Cir. 1984)).

Thus, this rule of law also applies when the evidence is not available at the time the ALJ conducted

the administrative hearing.   For example, in <u>Wilson</u>, the medical evidence concerned treatment

the claimant received months after the administrative hearing.   733 F.2d at 1182-83.

   3.   Discussion

   The Court will now address whether each piece of evidence is "new."   As explained

above, in assessing whether the evidence is new, the issue is whether it existed or was available to

Plaintiff at the time of the administrative hearing.   Here, the ALJ conducted the administrative

hearing on April 22, 2019 (Tr. 114).[4]   Dr. Greenwald issued his supplemental report on May 14,

2019 (Tr. 106-12), which is 22 days after the ALJ conducted the administrative hearing.   Clearly,

his supplemental report is "new" because it did not exist at the time of the administrative hearing.

The work life expectancy report is dated November 26, 2018 (Tr. 9-70), which is 147 days before

the ALJ conducted the administrative hearing.   Thus, the work life expectancy report is **not** "new"

because it existed **and** was available to Plaintiff at the time of the administrative hearing.   Clinical

Audiologist Abigail Garrett, Au.D., CCC-A, administered the VNG testing and issued a report on

May 10, 2019 (Tr. 1028-32), which is 18 days after the ALJ conducted the administrative hearing.

Technically the VNG report could be considered "new" because it did not exist at the time of the

administrative hearing.   However, unlike the two other pieces of evidence, the VNG report is

Exhibit 16F in the record that the ALJ considered when she rendered her opinion (*see* Tr. 101-05).

While the ALJ's decision does not expressly mention the VNG report, the ALJ must have

---

4 The ALJ issued her decision on June 12, 2019 (Tr. 87- 101).

considered it as she agreed with Dr. Greenwald's TBI diagnosis (Tr. 89).   Further, when Plaintiff submitted a copy of this report to the Appeals Council claiming that it was "new" evidence, the Appeals Council pointed out that it was not "new" evidence because it is a copy of Exhibit 16F (Tr. 3).   In sum, only Dr. Greenwald's supplemental report is "new" evidence.   The work life expectancy report and the VNG report are not "new" evidence.

Next, the Court will address whether each piece of evidence is "material."   Contrary to Plaintiff's assertion, Dr. Greenwald is not a treating source.   Rather, Plaintiff's counsel in the workers compensation action apparently retained Dr. Greenwald as a medical expert in brain injury medicine (Tr. 976-1026).   By way of background, Dr. Greenwald conducted an extensive review of the medical evidence, he interviewed and examined Plaintiff, and then prepared a report dated December 20, 2018 (Id.).   In that report, Dr. Greenwald opined that within a reasonable degree of medical certainty Plaintiff suffered a TBI on July 17, 2015 and the combination of cognitive, physical, and psychological impairments that Plaintiff continues to suffer are causally related to this injury (Tr. 1023).   Additionally, Dr. Greenwald opined that Plaintiff is totally and permanently disabled as a result of this combination of impairments causally related to her TBI (Id.).   The ALJ agreed with Dr. Greenwald's TBI diagnosis (Tr. 89).   *See* 20 C.F.R. § 404.1520(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).   But the ALJ explained that she was not persuaded with Dr. Greenwald's opinion that Plaintiff was totally and permanently disabled because the opinion was inconsistent with the medical evidence in the record (Tr.98).[5]

---

5 The ALJ's explanation reads as follows:

   Specifically, this opinion is inconsistent with the opinions of the claimant's

At issue is Dr. Greenwald's supplemental report dated May 14, 2019 (Tr. 106-10). Essentially, Dr. Greenwald indicated that supplemental reports prepared by Drs. Allen (psychiatrist) and Elferman (ophthalmologist), and a functional assessment prepared by Rich Wickstrom (physical therapist at WorkAbility Systems) did not change his opinions in the report dated December 20, 2018 (Tr. 110).[6]   Dr. Greenwald also asserted that the VNG report, prepared by Ms. Garrett on May 10, 2019, bolsters his previously expressed opinions because it shows objective evidence of the TBI sustained by Plaintiff (Tr. 110-11).   As Dr. Greenwald's supplemental report merely reiterates his previously expressed opinion—Plaintiff is totally and permanently disabled—which the ALJ found not persuasive, and the VNG report only substantiates Dr. Greenwald's TBI diagnosis, which the ALJ agreed with, the Court concludes that there is **not** a reasonable probability that the ALJ would have reached a different disposition of Plaintiff's disability claim if presented with this new evidence.   In sum, Dr. Greenwald's supplemental report dated May 14, 2019 (Tr. 106-10) is not "material."   Additionally, Plaintiff

---

> primary treating doctor Randall Oliver M.D. and the findings in her consultative examination in April 16, 2018, and the opinion of Jeffrey Gray Ph.D.   The claimant has some symptoms that include having migraines headaches due to her traumatic brain injury.   However, the medical records of evidence reflect that the claimant's symptoms are primarily due to her depression, as discussed during her treatment with Dr. Oliver and as reflected in her consultative examination in April 16, 2018.   During her consultative examination, the claimant achieved a full-scale IQ score of 99 on the Wechsler Adult Intelligence Scale test, which reflects that the claimant had no clear signs of cognitive rigidity.   Additionally, she achieved a raw score of 30 on the Beck depression Inventory test, which is indicative that the claimant has a moderate degree of anxiety. (Ex.15F)

(Tr. 98).

6 The defendant in the workers compensation action apparently retained these three sources to evaluate Plaintiff and render expert opinions (Tr. 106-10).

cannot demonstrate "good cause" because Dr. Greenwald's supplemental report was generated for the sole purpose of attempting to prove disability in the workers compensation action.

Plaintiff's attorneys in the personal injury action apparently retained a vocational economic specialist who prepared a work life expectancy report dated November 26, 2018 (Tr. 9-70).   In pertinent part the report indicates "[a]t the present time, due to a combination of impairments, Ms. Hendricks is unable to perform any type of substantial, gainful work activity.   Therefore, we consider her to be 100% occupationally disabled as a result of injury." (Tr. 34).   As Plaintiff filed her application for benefits after March 27, 2017, the applicable regulations indicate that such statements on issues reserved to the Commissioner are "inherently neither valuable nor persuasive" on the issue of whether the claimant is disabled and will not be analyzed in the decision. *See* 20 C.F.R. § 404.1520b(c).   This means there is **not** a reasonable probability that the ALJ would have reached a different disposition of Plaintiff's disability claim if presented with this evidence.   Moreover, Plaintiff has not shown a reasonable justification for the failure to present this evidence for inclusion in the hearing considering the fact it was generated 147 days before said hearing.

For the foregoing reasons, the Court concludes that Plaintiff is not entitled to a prejudgment remand, under sentence six of 42 U.S.C. § 405(g), as to the three pieces of evidence discussed above.

<u>Finding No. 3</u>

1.  Arguments of the Parties

Plaintiff also contends that the ALJ should have found that her multiple eye conditions, diagnosed by her optometrist Dr. Sampson, are a "severe" impairment and been included in the

14

RFC (DN 21-1 PageID # 1117-18).   In support of her position, Plaintiff cites her own testimony indicating she had to wear sunglasses as she is incredibly sensitive to light and she has several triggers that result in vertigo type episodes hem in spite of her testimony and objective medical evidence provided (Id.) (citing Tr. 129, 131).   Plaintiff also cites Dr. Sampson's diagnoses and treatment which included prescription prism glasses (Id.) (citing Tr. 391-92).

Defendant responds by pointing out that the purported error is harmless because at step two the ALJ found Plaintiff had several severe impairments and continued through the rest of the sequential evaluation (DN 29 PageID # 1158-60).   Additionally, while Plaintiff cites a treatment note listing several diagnoses and some objective findings, she has not shown how this significantly impaired her ability to perform basic work activities for at least 12 consecutive months or that any eye impairment created more restrictive limitations than those in the RFC finding (Id.).   Further, the ALJ noted that a medical provider concluded that there were no abnormalities in Plaintiff's bilateral eyes that explained her complaints of nausea, migraines, sensitivity to light, dizziness, and blurriness in her eyes (Id.) (citing Tr. 95, 477).

2.   Applicable Law

At the second step in the sequential evaluation process, a claimant must demonstrate she suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ."   20 C.F.R. § 404.1520(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).[7]

---

7 To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his or her physical or mental ability to do "basic work activities."   20 C.F.R. § 404.1522(a).

If the claimant does not have an impairment or combination of impairments that satisfy the above requirements, the Administrative Law Judge will find the claimant is not disabled and deny the claim.  20 C.F.R. § 404.1520(4)(ii); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).  Notably, the failure to find that a specific impairment is "severe" will be deemed harmless provided the Administrative Law Judge determines that the claimant has at least one severe impairment, continues with the sequential evaluation process, and considers all of the claimant's impairments (severe and nonsevere) in the remaining steps.  See Anthony v. Astrue, 266 F. Appx. 451, 457 (6th Cir. 2008) (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)).

    3.   Discussion

    Steven Sampson, O.D., conducted follow up evaluations of Plaintiff on September 30, 2016, January 6, 2017, and March 24, 2017 (Tr. 391, 392, 398).   His diagnoses changed somewhat over the course of treatment and by March 24, 2017, he indicated Plaintiff had visual disturbance, binocular vision disorder, left hyperphoria, saccadic eye movement deficit, and smooth motor pursuit deficit (Id.).   He addressed her eyesight problems by prescribing eye exercises and glasses with prism which helped her at work and with driving (Id.).   By March 24, 2017, Dr. Sampson felt Plaintiff had reached maximum improvement and he did not have anything more that he could do with her glasses or add to her therapies (Tr. 398).

    On January 30, 2018, Dr. Dion J. Dulay, a board-certified eye physician and surgeon, conducted an independent medical eye examination in connection with Plaintiff's worker compensation case (Tr. 477-79).   The eye examination involved: (1) corrected visual acuity for near and far; (2) visual field perception measurement; and (3) ocular motility and tests for diploa

(Tr. 477).   The results of his eye examination were as follows:

> (1)     SNELLEN visual acuity measured 20/25 at Far in the Right Eye, and 20/25 at Far in the Left Eye with best correction.   Near SNELLEN vision also measured 20/25 in the Right and Left Eyes. Combining these visual acuities for Far and Near in both eyes constitutes a 5% loss of Visual System due to the Visual Acuity tests.

> (2)     Visual Field measurements show 417 degrees of field in the Right Eye, and 397 degrees of field in the Left Eye.   This results in an 18% loss of Visual System Function due to this Visual field deficit.

> (3)     Ocular Motilify examination showed NO limitation of extraocular muscle function, and NO misalignment of the eyes, and NO diplopia.

> (4)     The patient had multiple complaints of other symptoms including: nausea, Migraines, sensitivity to light, "eyes don't line up," "frustration," and dizziness.   However, I can detect NO EYE abnormalities to account for these subjective symptoms.

> (5)     Therefore, this evaluation can only be based on the Visual Acuity and Visual field measurements.   Based on the AMA Guidelines, 5th Edition, of PPI Evaluation: The PPI Rating for the patient's Visual System is 22% Loss of Function.   A 22% Loss of Visual System Function is considered a 21% PPI Impairment of the whole Person.

(Id.).

At step two, the ALJ found that Plaintiff had several impairments that are "severe" (Tr. 89). As a result, the ALJ continued with the sequential evaluation process.   At step four, in connection with the RFC determination, the ALJ's summary of Plaintiff's testimony acknowledged her complaints of severe headaches that are intensified with bright light, patterns in grocery aisles, and the movement of objects (Tr. 93).   The ALJ also noted Plaintiff's complaint about poor balance and constantly running into items (Id.).   The ALJ also discussed the independent medical eye

17

examination performed by Dr. Dunlay (Tr. 95).[8]   In recognition of Plaintiff's eye conditions, the ALJ's RFC determination includes the following environmental limitations: no exposure to unprotected heights and moving mechanical parts; only work in conditions where lights are no brighter than standard office building; and cannot work where there is strobe lights (Tr. 92).   Thus, the ALJ's purported omission at step two is harmless error because she considered the limitations imposed by these conditions in determining Plaintiff's RFC.   *See* <u>Maziarz</u>, 837 F.2d at 244. In sum, Plaintiff is not entitled to relief as to this challenge.

Finding No. 5

1.   Arguments of the Parties

Plaintiff mounts three specific challenges to the RFC determination in Finding No. 5 (DN 21-1 PageID # 1114-21).   Plaintiff asserts that the ALJ committed clear error because she failed to: (1) specify the amount of weight afforded to the opinions of Drs. Watts and Greenwald (Tr. 97, 98); and (2) provide valid reasons for discrediting their opinions (<u>Id.</u> at PageID # 1114-16). Next, Plaintiff claims there was not substantial evidence to support the ALJ's decision to give "persuasive weight" to the opinions of Drs. Oliver and Gray because they predate the VNG testing that objectively confirmed the presence of her TBI and resulting symptoms (<u>Id.</u> at PageID #

---

8  The ALJ commented as follows:

> The undersigned also denotes that during an office visit to Dion Dulay M.D. in January of 2018, the claimant reported having multiple complaints including nausea, migraines, sensitivity to light, dizziness and blurriness in her eyes and that her "eyes don't line up".   Eye examination test findings showed no abnormalities in her bilateral eyes that account for these subjective symptoms. (Exs.3F, 7F and 8F)

(Tr. 95).

1116-17).[9]   And, finally, Plaintiff indicates clear error and a lack of substantial evidence supporting the RFC adopted by the ALJ considering Plaintiff's ongoing headaches, vertigo, and upper extremity limitations (Id. at PageID # 1119-21).

Defendant contends that the ALJ reasonably considered the evidence and opinions in the record and concluded that Plaintiff could perform a restricted range of light work with numerous postural, manipulative, environmental, and non-exertional limitations (DN 29 PageID # 1160). Defendant asserts that the new regulations for assessing medical opinions apply to Plaintiff's case and the ALJ's evaluation comports with the applicable law (Id. at PageID # 1161-) (citing 20 C.F.R. § 404.1520c).   Defendant points out, contrary to Plaintiff's assertion, under the new regulations the ALJ does not assign specific weight to the opinions of Drs. Watts and Greenwald (Id.) (citing 20 C.F.R. § 404.1520c(a)).   Instead, the ALJ must discuss the persuasiveness of the medical opinions in the record (Id.) (citing 20 C.F.R. § 404.1520c(b)).   Further, Defendant points out that the VNG testing is used to determine whether a patient has a disorder of the vestibular system—the balance structures in the inner ear—or in the part of the brain that controls balance (Id.).   While the VNG testing explains Plaintiff's dizziness, it is not a universal explanation for all of Plaintiff's claimed symptoms (Id.) (citing Tr. 1028).   Further, Defendant points out that the ALJ did not doubt that Plaintiff had a TBI and that it caused some of her symptoms (Id.) (citing Tr. 89-99).

---

9 Plaintiff reasons there is a lack of evidence because the VNG testing objectively confirms the presence of her TBI and "resulting symptoms" (DN 21-1 PageID # 1116).   Additionally, Plaintiff argues the ALJ should not have utilized Dr. Gray's opinion to bolster Dr. Oliver's opinion because Dr. Gray was potentially biased, having conducted a prior examination of Plaintiff in 2016 at the request of a defense attorney or workers compensation (Id.).

2.   Applicable Law

Plaintiff argues that the ALJ committed "clear error" in the assignment of weight to certain medical opinions and in assessing Plaintiff's RFC (DN 21-1 PageID # 1114-21).   But "clear error" is the wrong standard of review.   Under the applicable standard of review, the Court is limited to determining whether the findings in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the RFC finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a).   As Plaintiff filed her application after March 27, 2017, the new regulations for evaluating medical opinions are applicable to Plaintiff's case.   *See* 20 C.F.R. § 404.1520c.

The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[10] in the record, even if it comes from a treating medical source.   20 C.F.R.

---

10 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. § 404.1513a(a)(1).   Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological

§ 404.1520c(a).[11]   Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. § 404.1520c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20 C.F.R. § 404.1520c(c)(1)-(5).[12]   Of these five factors, the two most important are supportability and consistency.   20 C.F.R. § 404.1520c(a) and (b)(2).   Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. § 404.1520c(b)(2).   Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. § 404.1520c(b)(2).

In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings.   20 C.F.R. § 404.1529; Social Security Ruling 16-3p.   A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged.   20 C.F.R. § 404.1529(a).   In determining

---

consultants according to the new regulation.   20 C.F.R. § 404.1513a(b)(1).

11  The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

12  In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. § 404.1520c(c)(3)(i)-(v).

whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.   First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.   When, as in this case, the reported pain and other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. § 404.1529(c)(3).

   3.   Discussion

   Plaintiff's challenge to the ALJ's assessment of certain medical opinions in the record cites only one case and no regulatory rules in support of her position (see DN 21-1 PageID # 1114-17) (citing Hurst v. Sec'y of Health & Human Servs., 753 F.2d 517, 519 (6th Cir. 1985) (articulating reasons for crediting or rejecting a treating source's conclusions is essential for meaningful appellate review).   Notwithstanding, the language in Plaintiff's argument suggests that she is relying on the rules in 20 C.F.R. § 404.1527.   But these rules do not apply to Plaintiff's case because she filed the application after March 27, 2017.   See 20 C.F.R. §§ 404.1520c, 404.1527.

   Plaintiff takes issue with the ALJ's assessments of medical opinions expressed by Drs. Watts, Greenwald, Oliver, and Gray (Id. at PageID # 1114-17).   In pertinent part, the ALJ's decision reads as follows:

>    Endraetta Watts M.D. completed a document dated August 4, 2017.
>    Dr. Watts opined that the claimant has memory loss because of a

work related motor vehicle accident. Dr. Watts opined that the claimant has limitations in her verbal short-term memory and may require cues or longer time to complete tasks. Further, Dr. Watts opined that the claimant would require a lot of additional time to complete multi-staged tasks. Dr. Watts also opined that the claimant might require additional breaks as she continues to have headaches and vertigo. Lastly, Dr. Watts opined that the claimant should avoid heights. The undersigned is not persuaded with this opinion. The claimant has limitations due to her depression, anxiety and traumatic brain injury as discussed above. However, during her consultative examination on April 16, 2018, the claimant had normal findings on the Word Test and Wisconsin Card Sorting Test. Additionally, she displayed normal limits on her remote, short-term and working memory as she achieved an average range IQ score of 99 on the Wechsler Adult Intelligence Test. Accordingly, the evidence supports a finding that the claimant is capable of light work activity with limitations that include she could understand, remember and carry out simple routine tasks and sustain concentration, persistence and pace for the completion of those tasks for two-hour segments of time in an eight- hour workday, she could not work at a production-based job and she is limited to making simple work place decisions. (Ex.4F)

Randall Oliver M.D.'s progress treatment notes from March of 2018 contain restrictions on the claimant's work activity. Dr. Oliver opined that the claimant has difficulty with word finding, concentrating and memory loss due to her condition. Dr. Oliver opined that the claimant is capable of working a full-time job because there is no reason her post-concussion related symptoms should have worsened. Dr. Oliver opined that psychological factors such as depression may be affecting her mental functioning. The undersigned is persuaded with this opinion, as it is consistent with the medical records of evidence. Specifically, during her consultative examination on April 16, 2018, the claimant had grossly intact attention and concentration. Moreover, she achieved a full-scale IQ score of 99 on the Wechsler Adult Intelligence Scale test, which reflects that the claimant had no clear signs of cognitive rigidity. Additionally, she achieved a raw score of 30 on the Beck depression Inventory test, which is indicative that the claimant has a moderate degree of anxiety. Accordingly, the undersigned has determined that this opinion is consistent with the opinion of Jeffrey Gray Ph.D. and that the claimant is capable of performing work

23

activity.   Specifically, the claimant is capable of light work activity with limitations as contained in the residual functional capacity. (Ex. 10F)

Brian D. Greenwald M.D. completed a document dated November 15, 2018.  Dr. Greenwald opined that the claimant has impaired concentration.    Dr. Greenwald opined that as a result of the combination of cognitive, physical and psychological impairments that the claimant has related to her traumatic brain injury the claimant is totally and permanently disabled.   The undersigned is not persuaded with this opinion, as it is inconsistent with the medical records of evidence.    Specifically, this opinion is inconsistent with the opinions of the claimant's primary treating doctor Randall Oliver M.D. and the findings in her consultative examination in April 16, 2018, and the opinion of Jeffrey Gray Ph.D.    The claimant has some symptoms that include having migraines headaches due to her traumatic brain injury.    However, the medical records of evidence reflect that the claimant's symptoms are primarily due to her depression, as discussed during her treatment with Dr. Oliver and as reflected in her consultative examination in April 16, 2018.   During her consultative examination, the claimant achieved a full-scale IQ score of 99 on the Wechsler Adult Intelligence Scale test, which reflects that the claimant had no clear signs of cognitive rigidity. Additionally, she achieved a raw score of 30 on the Beck depression Inventory test, which is indicative that the claimant has a moderate degree of anxiety. (Ex.15F)

The claimant presented for a consultative examination on April 16, 2018.   Jeffrey W. Gray Ph.D. administered a Wechsler Intelligence Scale, Fourth Edition (WIS-IV) IQ test, upon which the claimant achieved a full scale IQ score of 99, which falls within the average range of intellectual functioning.   Dr. Gray also administered a Stoop Color test, Word test and Wisconsin Card Sorting test.   The claimant had no clear signs of cognitive rigidity on these tests and had no difficulties on the Wisconsin Card Sorting test.   Lastly, the claimant was administered the Beck Depression Inventory test, upon which the claimant achieved a raw score of 30, which is indicative of moderate anxiety.   Dr. Gray opined that the claimant has the ability to do complex, detailed, and simple repetitive types of tasks. Further, Dr. Gray opined that the claimant would have a difficult time consistently handling work like stresses, if tasks were highly complex in nature and should perform simple types of tasks.   The undersigned is persuaded with this opinion, as it is consistent with the medical records of evidence.   The claimant has difficulties due

24

> to her traumatic brain injury.  However, the medical records of evidence reflect that the claimant's symptoms are primarily due to increasing depression and anxiety.  Accordingly, the undersigned is persuaded with this opinion as it is consistent with the opinions of Randall Oliver M.D. and Jeffrey Gray Ph.D. (Ex.12F)

(Tr. 97-99).

The above discussion is consistent with the new regulations because the ALJ evaluated the "persuasiveness" of the medical opinions by utilizing the two most important factors, supportability and consistency.  *See* 20 C.F.R. §§ 404.1520c(a) and (b).  Further, the ALJ explained how she considered the supportability and consistency factors in determining the persuasiveness of the above medical opinions.  *See* 20 C.F.R. §§ 404.1520c(b)(2).  Contrary to Plaintiff's assertion, her performance on the testing administered by Dr. Gray—the Wechsler Intelligence Scale, Fourth Edition (WIS-IV) IQ test, Stoop Color test, Word test, Wisconsin Card Sorting test, and the Beck Depression Inventory test—provides objective support for the opinions expressed by Drs. Oliver and Gray while undermining or contradicting the opinions expressed by Drs. Watts and Greenwald.  While the VNG testing may objectively confirm the presence of Plaintiff's TBI, it does not objectively confirm that Plaintiff's symptoms are the product of TBI, as opposed to psychological factors (*see* Tr. 1028-32).  By contrast, Plaintiff's performance on the Wechsler Intelligence Scale, Fourth Edition (WIS-IV) IQ test, Stoop Color test, Word test, Wisconsin Card Sorting test, and the Beck Depression Inventory test objectively confirms that Plaintiff's symptoms are the product of psychological factors such as depression and anxiety.  Further, as explained by the ALJ, the opinions of Drs. Oliver and Gray are more consistent with the medical records.   In sum, the ALJ's evaluations of the medical opinions of Drs. Watts, Oliver,

Greenwald, and Gray are supported by substantial evidence in the record and comport with applicable law.

Next, Plaintiff contends the RFC determination is not supported by substantial evidence because the ALJ failed to appropriately consider Plaintiff's subjective statements about her ongoing headaches, vertigo, and upper extremity limitations (DN 21-1 PageID # 1119-21).   To the contrary, the ALJ accurately summarized Plaintiff's subjective statements regarding these conditions, the medical evidence related thereto, and medical opinions concerning these conditions (Tr. 93-98).   *See* 20 C.F.R. § 404.1529; Social Security Ruling 16-3p.   The ALJ, in compliance with applicable law, examined the evidence in the record and determined that the objective medical evidence did not confirm that these conditions were of such severity that they can reasonably be expected to produce the pain and other symptoms claimed by Plaintiff (Id.).   *See* Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).   Because the reported pain and other symptoms suggested impairments of greater severity than could be shown by the objective medical evidence, the ALJ appropriately considered other information and factors that may be relevant to assessing Plaintiff's pain and other symptoms (Id.).   *See* 20 C.F.R. § 404.1529(c)(3). For example, the ALJ considered Plaintiff's level of daily activity (Tr. 90-98).   *See* 20 C.F.R. § 404.1529(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990).   The ALJ also considered whether there were any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the rest of the evidence in the record.   *See* 20 C.F.R. § 404.1529(c)(4).   The ALJ's conclusion--Plaintiff did not suffer pain and other symptoms to the extent she testified (Tr. 93-98)—is supported by substantial evidence and comports with the law.

In sum, the RFC set forth in Finding No. 5 is supported by substantial evidence in the record and comports with applicable law.   For the above reasons, Plaintiff is not entitled to relief regarding her challenges to the RFC in Finding No. 5.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

August 30, 2021

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:          Counsel

27